UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**CRYSTAL SKURZEWSKI,**

**CASE NO.:**

      **Plaintiff,**

vs.

**TPUSA, Inc., a Foreign Profit Corporation,**

      **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, CRYSTAL SKURZEWSKI ("Plaintiff"), by and through undersigned counsel, file this Complaint against Defendant, TPUSA, Inc., a Foreign Profit Corporation ("TPUSA" or "Defendant") pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §201 *et seq.,* as amended by the Equal Pay Act, 29 U.S.C. §§206(d) ("EPA"), and is brought to remedy discrimination on the basis of sex in the payment of wages. Plaintiff also brings related claims for breach of contract or, in the alternative, unjust enrichment, related to the failure to pay her wages owed, where her male counterparts were paid those wages, and states as follows:

**JURISDICTION AND VENUE**

1. Plaintiff worked for TPUSA in Clark County, Nevada.

2. At all times material hereto, TPUSA was, and continues to be, a Foreign Profit Corporation engaged in business in Clark County, Nevada.

3. Jurisdiction in this Court is proper as the claims are brought pursuant to the EPA to obtain a judgment against Defendant as to liability, liquidated damages, appropriate

1

equitable relief, and reasonable attorneys' fees and costs.

4. The jurisdiction of the Court over this controversy is proper pursuant to 28 U.S.C. §1331, as Plaintiff' claims arise under 29 U.S.C. §201 *et seq*.

5. This Court has supplemental jurisdiction over Plaintiff's for breach of contract and unjust enrichment claims pursuant to 28 U.S.C. § 1367(a), because Plaintiff's claims form a part of the same case or controversy and arise out of the same common nucleus of operative facts as her EPA claims.

6. Venue is proper in this Court because, pursuant to the terms of Plaintiff's original Offer Letter, any action or proceeding brought in connection with or arising out of Plaintiff's employment with TPUSA shall be brought in the state or federal courts within Palm Beach County, Florida.

## PARTIES

7. TPUSA is a part of Teleperformance, or "TP," and operates a global digital business services company providing "digitally-powered business services to help the world's best brands streamline their business in meaningful and sustainable ways." *See* https://www.teleperformance.com/en-us/why-tp/about-tp/

8. TPUSA is a Foreign Limited Liability Company, with its principal place of business located in Salt Lake City, Utah.

9. At all times material hereto, Defendant was, and continues to be, a Foreign Limited Liability Company conducting business across the country, and internationally.

10. At all times material hereto, Plaintiff was, and continues to be, a resident of Clark County, Nevada.

11. Plaintiff is a female.

12. At all times material to this action, Plaintiff was an "employee" of Defendant within the meaning of the EPA.

13. At all times material hereto, Defendant was an "employer" within the meaning of the EPA.

14. At all times material hereto, Defendant is, and continues to be, "an enterprise engaged in commerce."

15. At all times material hereto, Defendant is, and continues to be, an enterprise engaged in the "handling, selling, or otherwise working on goods and materials that have been moved in or produced for commence by any person" within the meaning of the EPA.

16. At all times material hereto, the annual gross revenue of Defendant was in excess of $500,000.00 per annum.

17. At all times material hereto, Defendant had two (2) or more employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for interstate commerce, including, telephones, desks, chairs, and computers, which were used directly in furtherance of Defendant's business.

## FACTUAL ALLEGATIONS

18. On July 1, 2022, Defendant sent a written offer letter to Plaintiff, offering her employment as a Senior Vice President Gaming & Metaverse ("Original Offer").

19. Plaintiff's Original Offer stated that she would report to David Cook, who, according to the letter, held the position of "President, Business Development."

20. Per the Original Offer, Plaintiff's salary for the SVP position was $10,417.67 per pay period, for 24 pay periods per year.

21. Per the Original Offer, Plaintiff was also entitled to receive commissions,

offset against an annual non-recoverable aggregate draw of $100,000.00.

22. In October 2022, TPUSA verbally offered Plaintiff the position of Chief Revenue Officer ("CRO") of the Google, Apple, Meta, Microsoft, and Amazon ("GAMMA") space.

23. Plaintiff was interviewed for this position by Eric Dupuy, Chief Global Business Development Officer of TP, the global entity of which TPUSA is a part.

24. David Cook recommended Plaintiff for this promotion.

25. Plaintiff accepted this promotion to CRO.

26. Plaintiff was never told that any written contract needed to be executed to effectuate the transition to CRO.

27. Plaintiff and Defendant agreed that Plaintiff would be paid commissions at a rate commensurate with David Cook's commission payment plan, which was to be 3.5% of her team's sales.

28. Plaintiff was told, even before her promotion, that if she hit her targets as a Senior Vice President, her compensation would be over 1.5 million dollars per year.

29. Internally, David Cook was also referred to as a CRO, despite outwardly being referred to as "President, Business Development" in external documents.

30. Similarly, Marcel Vrieling was internally described on presentations and other documents as a CRO, despite outwardly holding the title of Chief Business Development & Marketing Officer, EMEA Region.

31. Similarly, Pablo Antoja was internally described on presentations and other documents as a CRO, despite outwardly holding the title of President of Sales Spain, Portugal and Latin America, until January 2025.

32. Robert Jimenez also held the title of CRO, both outwardly, and internally within TPUSA.

33. While Plaintiff was internally referred to as a CRO, and performed job duties commensurate with David Cook, Marcel Vrieling, Pablo Antoja, and Robert Jimenez (the "Male CROs"), her outward title was "Global President, Strategic Accounts."

34. In Plaintiff's role as CRO, Vice Presidents, Senior Vice Presidents, and Executive Vice Presidents reported to her.

35. Plaintiff and the Male CROs reported directly to Eric Dupuy and Daniel Julien, the founder and then-CEO of TPUSA.

36. Beginning in November 2022, Plaintiff participated in weekly Saturday meetings with Daniel Julien where the only attendees from the sales side of the company were Plaintiff and the Male CROs.

37. Plaintiff's salary was never increased when she became CRO. Instead, she continued to be paid the same salary and draw she was paid in the position of SVP.

38. Upon information and belief, the Males CROs were paid significantly higher salaries than Plaintiff.

39. In fact, even men in other "president" positions, who did not have a CRO role, were paid significantly more than Plaintiff. For example, Plaintiff is aware that during her employment, Akash Pugalia, the "Global President of Trust & Safety" was paid a salary of $450,000.00, along with commissions.

40. Plaintiff performed substantially similar work to the Male CROs, under similar working conditions.

41. The Male CROs were also paid commissions, both for their own personal sales, as well as based on the sales of the teams reporting to them.

42. Plaintiff excelled in her role as CRO, bringing in new lines of business with companies such as YouTube, LinkedIn, Apple Data Labeling, Amazon and Microsoft (Bing), all of which TPUSA would not have obtained without Plaintiff.

43. In her position as CRO, Plaintiff made sales personally, and also was in charge of a team of direct reports which generated sales.

44. Upon information and belief, the Plaintiff's direct reports whom she led as CRO generated hundreds of millions of dollars worth of sales for TPUSA.

45. Plaintiff hit all targets TPUSA set for her as CRO of GAMMA.

46. Plaintiff was promised commissions of 3.5% on her own and her team's sales in her role as CRO of GAMMA.

47. Plaintiff was never paid any commissions at any point during her tenure with TPUSA.

48. Defendant has violated Title 29 U.S.C. §206 (d) from at least July 1, 2022, through October 31, 2023, by paying wages to Plaintiff, a female employee, at a rate less than the rate at which TPUSA paid wages to employees of the opposite sex for equal work on jobs the performance of which required equal or lesser skill, effort, and responsibility, and which were performed under similar working conditions.

49. Defendant's failure and/or refusal to properly compensate Plaintiff at the rates and amounts required by the EPA was willful, as Defendant knew, or with reasonable diligence should have known, of the EPA's mandates and their applicability to Plaintiff's employment, but chose to pay her at a rate lower than it paid to employees of the opposite

sex for equal work on jobs the performance of which required equal or lesser skill, effort, and responsibility, and which were performed under similar working conditions.

50. Plaintiff addressed TPUSA's retention of her commissions numerous times with her HR Representative, Shay Cushman.

51. Plaintiff also complained and set multiple meetings with Mr. Dupuy, but never received a response, nor did Mr. Dupuy appear for any of the scheduled meetings.

52. Thus far, despite Plaintiff repeated requests for payment, TPUSA has not honored its obligation to pay her commissions on her sales.

53. TPUSA knew, or with reasonable diligence should have known, that retaining Plaintiff's commissions was unlawful.

54. Upon information and belief, Plaintiff has been damaged by TPUSA's failure to pay her earned commissions.

55. Plaintiff's work for the company created profits, generated customer sales, and generated customer goodwill, for TPUSA.

56. The work Plaintiff performed was for TPUSA's benefit.

57. Plaintiff performed work for TPUSA's benefit based on her expectation that she would be paid commissions of 3.5% of her and her team's sales.

58. It would be unjust for TPUSA to retain the value of Plaintiff's work without paying her the amounts she was promised for this work, the promise of which induced Plaintiff to perform this valuable work in the first place.

59. Plaintiff performed all of the work that was asked of her but has not been compensated as promised for the same, because TPUSA has retained, and not paid, monies that should have been paid to Plaintiff for her sales commissions.

60. TPUSA has taken the position that Plaintiff did not sign a contract and therefore is not owed any commissions.

61. TPUSA never presented Plaintiff with a written CRO or Global President, Strategic Accounts, contract or compensation plan. Rather, the only compensation plan presented to Plaintiff was for a "Revenue Growth Officer" ("RGO"), which contained significantly different terms than discussed when she accepted the promotion.

62. While the RGO plan purported to "supersede" any prior compensation plan, Plaintiff did not sign the RGO plan.

63. Plaintiff made it known that she would not sign the RGO plan because the terms contained therein were different from those to which the Parties had already agreed, and which prior terms Plaintiff was already fulfilling with respect to her role, work, and responsibilities.

## COUNT I
## VIOLATION OF THE EQUAL PAY ACT OF 1963, 29 U.S.C. §206 (d)

64. Plaintiff incorporates paragraphs 1 through 63 as though fully set forth herein.

65. From at least November 1, 2022, and continuing through October 31, 2023, Plaintiff was paid a salary of $250,000.00, and a $100,000 non-recoverable draw.

66. Male CROs, as well as individuals in lower-level positions were paid salaries significantly higher than Plaintiff's salary.

67. The Male CROs were paid commissions on sales for themselves and their direct reports.

68. Unlike the Male CROs, Plaintiff was never paid any commissions.

69. Defendant has violated Title 29 U.S.C. §206 (d) from at least July 1, 2022,

through October 31, 2023, by paying wages to Plaintiff, a female employee, at a rate less than the rate at which TPUSA paid wages to employees of the opposite or equal work on jobs the performance of which required equal or lesser skill, effort, and responsibility, and which were performed under similar working conditions.

70. Defendant's failure and/or refusal to properly compensate Plaintiff at the rates and amounts required by the EPA was willful, as Defendant knew, or with reasonable diligence should have known, of the EPA's mandates and their applicability to Plaintiff's employment, but chose to pay her at a rate lower than it paid to employees of the opposite or equal work on jobs the performance of which required equal or lesser skill, effort, and responsibility, and which were performed under similar working conditions.

71. Due to the intentional, willful, and unlawful acts of Defendant, Plaintiff suffered, and continues to suffer damages and lost compensation for worked performed at a lesser rate than her male counterparts, plus liquidated damages.

72. Plaintiff is entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

WHEREFORE, Plaintiff requests a judgment entered in her favor and against Defendant for actual and liquidated damages, as well as, costs, expenses and attorneys' fees and such other relief deemed proper by this Court.

## COUNT II
## BREACH OF ORAL CONTRACT

73. Plaintiff incorporates paragraphs 1 through 63 as though fully set forth herein.

74. Defendant offered Plaintiff a promotion to CRO of GAMMA, with additional entitlement to commissions in the amount of 3.5% of her and her team's sales,

in exchange for Plaintiff taking on increased job responsibilities.

75. Plaintiff accepted Defendant's offer.

76. Plaintiff performed the work of CRO of GAMMA, and Defendant treated Plaintiff, in every manner except her compensation, as CRO of GAMMA.

77. Defendant failed to pay Plaintiff at the rates she was promised in her role as CRO of GAMMA.

78. In fact, Defendant failed to pay Plaintiff any commissions at all.

79. Defendant's failure to pay Plaintiff her promised commissions was a material breach of the Parties' contract.

80. Plaintiff has been damaged by Defendant's breach, in that Plaintiff has been denied promised wages.

81. The commissions owed constitute "wages" pursuant to Fl. Stat. § 448.08.

82. Wherefore, Plaintiff prays for the following relief:

    a. An award of any unpaid wages owed, in the amount of 3.5% of Plaintiff's and her team's sales;

    b. An award of the costs of suit and reasonable attorneys' fees pursuant to Fl. Stat. § 448.08;

    c. An award of pre- and post-judgment interest; and

    d. Any and all other relief that the Court deems just.

### COUNT III
### UNJUST ENRICHMENT
### (in the alternative)

83. Plaintiff incorporates paragraphs 1 through 63 as though fully set forth herein.

84. Plaintiff conferred a benefit upon Defendant when she performed work for the Defendant's profit and benefit, with an expectation that she would be paid commissions on sales.

85. Plaintiff would not have performed work for Defendant had it indicated that it did not intend to pay her commissions of 3.5% of her and her team's sales.

86. Defendant was aware of Plaintiff' expectation that she would be paid in the manner described herein, and allowed and/or encouraged Plaintiff to perform work on its behalf with that expectation.

87. Plaintiff generated revenue and other benefits for Defendant through her work on its behalf.

88. It would be unjust to allow Defendant to retain the benefit of the revenue and other gains generated by Plaintiff' work, where Defendant is and was aware of Plaintiff' expectations, and did not pay Plaintiff all of the monies she reasonably expected to be paid for her work.

Wherefore, Plaintiff pray for the following relief:

a. An award of restitution or disgorgement of all revenue generated by Plaintiff of an amount not less than any unpaid commissions (3.5% of Plaintiff's and her team's sales) owed as a result of Plaintiff's and her team's sales;

b. An award of the costs of suit and reasonable attorneys' fees pursuant to Fl. Stat. § 448.08;

c. An award of pre- and post-judgment interest; and

d. Any and all other relief that the Court deems just.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 5th day of March, 2025.

                                        */s/ Angeli Murthy*
                                        Angeli Murthy, Esq., B.C.S.
                                        Florida Bar No. 88758
                                        Morgan & Morgan, P.A.
                                        8151 Peters Rd., 4th Floor
                                        Plantation, FL 33324
                                        Tel: 954-318-0268
                                        Fax: 954-327-3016
                                        E-mail: Amurthy@forthepeople.com
                                        *Attorney for Plaintiff*